| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | EASTERN DISTRICT OF ARKANSAS |
| 2 | WESTERN DIVISION |

1           IN THE UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF ARKANSAS
2                 WESTERN DIVISION

3   UNITED STATES OF AMERICA,

4                Plaintiff,

5     v.                       No. 4:02CR00126 SWW

6   JOSEPH CRANFORD,           December 8.  2011
                             Little Rock, Arkansas
7                Defendants.     10:08 a.m.

8

9                     **TRANSCRIPT OF HEARING**
       BEFORE THE HONORABLE SUSAN WEBBER WRIGHT,
10             UNITED STATES DISTRICT JUDGE

11

12  APPEARANCES:

13  On Behalf of the Government:

14      MS. STEPHANIE MAZZANTI, Assistant U.S. Attorney
      United States Attorney's Office
15        425 West Capitol Avenue, Suite 500
      Post Office Box 1229
16        Little Rock, Arkansas  72203-1229

17  On Behalf of Defendant, James Bruce Morris:

18      MR. CHRISTOPHE TARVER, Assistant Federal Defender
      Federal Public Defender's Office
19        1401 West Capitol Avenue, Suite 490
      Little Rock, Arkansas  72201
20

21

22

23      Proceedings reported by machine stenography and displayed

24  in realtime; transcript prepared utilizing computer-aided

25  transcription.

```
1                    P R O C E E D I N G S

2          THE COURT:  Good morning.  This is a hearing that we

3   started some time ago in United States v Joseph Cranford.  Let

4   the record reflect that Mr. Cranford is here with his attorney,

5   Mr. Chris Tarver, and the United States is represented by

6   Ms. Stephanie Mazzanti.

7      I would like for Mr. Cranford and Mr. Tarver to come

8   forward.  The clerk will swear Mr. Cranford.

9            JOSEPH CRANFORD, DEFENDANT, DULY SWORN

10         THE COURT:  All right.  Mr. Cranford, are you under

11  the influence of any drugs today?

12         THE DEFENDANT:  No, ma'am.

13         THE COURT:  And I know I detained you the last time we

14  were together on this matter because you did test positive --

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  -- for marijuana, and I know you said that

17  you were competent nonetheless.  You might have been, but now I

18  think you are competent.

19      Do you agree, Mr. Tarver?

20         MR. TARVER:  Your Honor, I have not had a conversation

21  with him.

22         THE COURT:  Would you like to do that?

23         MR. TARVER:  I attempted to do that, and he informed

24  me that he had hired someone else to represent him.

25         THE DEFENDANT:  May I address the Court, Your Honor?
```

1          THE COURT:  You may.

2          THE DEFENDANT:  I sent the letter to Mr. Tarver to

3     turn the case over to my attorney, for one reason because,

4     first, he lied in court.  It was my first time ever talking to

5     him on the 25th.  And secondly, I have been held -- my

6     constitutional rights has been violated already.  I have been

7     held unconstitutionally for the last ten days, and I --

8          THE COURT:  I ordered you detained.

9          THE DEFENDANT:  But after I gave a negative UA, I

10    should have been released.

11         THE COURT:  That's your opinion, but --

12         THE DEFENDANT:  I thought it was my constitutional

13    right.

14         THE COURT:  You can certainly pursue that.

15         THE DEFENDANT:  And Ms. Theresa Bloodman tried to get

16    on my case, but Mr. Tarver wouldn't get off my case for some

17    reason.

18         THE COURT:  Has she entered an appearance in your

19    case?

20         THE DEFENDANT:  She said she did, but Mr. Tarver

21    informed her that he was competent to take my case.  He

22    wouldn't get off, so to speak.

23         THE COURT:  I do not see that Ms. Bloodworth --

24         THE DEFENDANT:  Bloodman.

25         THE COURT:  Pardon?

1          THE DEFENDANT:  Bloodman.

2          MR. TARVER:  It's B-L-O-O-D-M-A-N.

3          THE COURT:  I'm sorry.  I thought you said

4    Bloodworth -- has entered an appearance here.

5          THE DEFENDANT:  She told me she phoned.

6          THE COURT:  Mr. Tarver?

7          MR. TARVER:  I spoke with Ms. Bloodman last week.  She

8    called to inquire about the case.  When we were in court the

9    last time, Mr. Cranford indicated that he had hired her.  The

10   first I heard from her -- I talked to his sister, and she

11   informed me that they had retained her.  And a few minutes

12   later Ms. Bloodman contacted me and asked me about the case.  I

13   told her what was going on with the case, what it was, what the

14   issues were.  I read the petition to her.  She indicated to me

15   that she wasn't interested in taking the case, but Mr. Cranford

16   says that she is retained.  I explained to his sister and I

17   explained to Mr. Cranford all she had to do was enter -- file

18   an entry of appearance to get into the case.

19         THE DEFENDANT:  The reason she is not here today is

20   she said she didn't want to disrespect the Court by coming

21   because he didn't want to get off the case.

22         THE COURT:  All right.

23         THE DEFENDANT:  And I would like to have another court

24   date if it's possible so I can come in with my own attorney.

25   Even if Ms. Bloodman do not want to be, I would like to have my

1    own attorney.

2         THE COURT:  We have been -- I am not going -- you have

3    had your chance to get your own attorney.  She has not entered

4    an appearance.  You have already complained about the length of

5    time this has taken.  Your supervised release period has really

6    expired; although, I can still sanction you for violations that

7    occurred within the supervised release period.  And I am going

8    to require that you either proceed with Mr. Tarver, who is an

9    excellent lawyer and he is an officer of this court -- and he

10   has been an officer of this court for many years, and I have

11   never known him to state something falsely to me deliberately.

12   He knows that that's a -- lawyers in this court ordinarily

13   don't do that because it's a very serious matter when they do.

14        THE DEFENDANT:  The day on the 25th, ma'am, that was

15   my first time seeing him or talking to him.

16        THE COURT:  Well, that's -- that doesn't mean anything

17   to me as long as he had a discussion with you.  This is not a

18   complicated case.

19        THE DEFENDANT:  No, it's not.  And for one other

20   reason, Your Honor, is I asked him was it relevant or right to

21   violate me.  And I think it's the law is it's two weeks before

22   I get off papers that I have to sign papers to violate.

23        THE COURT:  I don't know what you are -- do you want

24   to proceed on your own without a lawyer today or do you want

25   Mr. Tarver to continue to represent you?  You cannot have it

1    both ways.  You may have Mr. Tarver or you may go on your own.

2              THE DEFENDANT:  Will I be able to appeal if I lose?

3              THE COURT:  Of course.

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  If you choose to go on your own, I am

6    going to require that you sign a waiver indicating that you

7    understand all the advantages of having an attorney, and we

8    can -- we can do that.

9              THE DEFENDANT:  Okay.  I feel --

10             THE COURT:  We are going to have this hearing today.

11             THE DEFENDANT:  I feel more comfortable representing

12   myself.

13             THE COURT:  All right.  Let me -- we are going to take

14   a break.

15        Mr. Tarver, do you have any forms for waiver of attorney?

16             MR. TARVER:  No, Your Honor.

17             THE COURT:  I can find one.  And -- actually, I won't

18   get a form.  I will just ask him a lot of questions.  I think

19   that would be easier.  First of all, Mr. Tarver, you are not

20   excused from the courtroom because I am going to require that

21   you remain for purposes of consulting Mr. Cranford in the event

22   I permit him to represent himself.

23             MR. TARVER:  (Nodding)

24             THE COURT:  All right.  Mr. Cranford, you have told me

25   that you prefer to represent yourself instead of having

1    Mr. Tarver represent you; is that correct?

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  Do you understand that important

4    constitutional and legal rights might be at issue in your case

5    that Mr. Tarver is well versed in and schooled in and --

6    because he has been to law school and he has practiced a long

7    time?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  And do you understand that, as far as I

10   know, you have not been educated in the law?  Is that correct?

11          THE DEFENDANT:  That's correct.

12          THE COURT:  Do you understand that there are -- it's

13   very easy in court to waive rights or give them up if you mess

14   up procedurally, even if you don't know that you are giving

15   them up.

16          THE DEFENDANT:  Yes, Your Honor.  But the reason I am

17   doing that is because even Mrs. Bloodman even informed me that

18   y'all have two weeks before I get off papers to violate me.  I

19   asked Mr. Tarver the same thing.  And he said that was not

20   right; y'all was within y'all's rights.  I feel like his

21   representation, it's not within my best interests.

22          THE COURT:  I don't understand when you say "two weeks

23   to violate you" --

24          THE DEFENDANT:  Before I got off papers.

25          THE COURT:  How did I miss the two weeks?

1          THE DEFENDANT:  Because the paper was signed

2    September 30.  I got off paper October 5th.

3          THE COURT:  All right.  It was filed before you got

4    off your supervised release, correct?

5          THE DEFENDANT:  Yes.

6          THE COURT:  It was filed, and then we brought you in

7    to court.

8          THE DEFENDANT:  But not two weeks before I got off.

9          THE COURT:  Well, the position this Court is going to

10   take is that the petition to revoke your supervised release was

11   timely filed.

12       Would you like to say anything about this, Ms. Mazzanti?

13          MS. MAZZANTI:  Yes, Your Honor.  I would agree with

14   the Court.  As long as the government files the motion to

15   revoke the supervised release prior to the expiration of the

16   supervised release and the defendant is served with a summons

17   or warrant before the date of the expiration, which would have

18   been October 5th, then we have jurisdiction to proceed on this.

19   And the summons in this case, I confirmed -- and I anticipate

20   there may be some issue with that because of the close dates

21   here.  And so I confirmed with the clerk's office that the

22   summons in this case on the initial petition to revoke was

23   issued and -- on 9/30 of 2011.  And so the Section 3583(i)

24   extends the jurisdiction of the Court where the summons has

25   been issued prior to the expiration of the supervised release.

1    And so there is no two-week rule --

2              THE DEFENDANT:  If it's not --

3              MS. MAZZANTI:  -- in federal court.  And maybe Ms. --

4    I don't know Ms. Bloodman's experience in federal court.  She

5    may have some misunderstanding.  I don't know if there is a

6    state court procedure.

7              THE DEFENDANT:  It's not just Ms. Bloodman.  My

8    probation officer, Mr. Myrene, even said that before I even got

9    it.  If it was within the two weeks period, I would not be

10   violated, and it was not in two weeks.

11             THE COURT:  I have never heard of that rule.

12        Mr. Myrene?

13             THE PROBATION OFFICER:  I am not aware of any two-week

14   rule that has to be filed two weeks before the expiration.  I

15   am not aware of that.  I know that it has to be filed, and it

16   has to be summonsed before the expiration date.

17             THE DEFENDANT:  You didn't tell me not a month before

18   I got off papers that if they didn't sign the paper two weeks

19   before I got off papers that they wouldn't have the right to

20   violate me?  You didn't inform me of that?

21             THE PROBATION OFFICER:  I don't recall that.  All I

22   recall is that --

23             THE DEFENDANT:  I have no further questions, Your

24   Honor.

25             THE COURT:  Hold on just a minute.  You're a lawyer in

1   this case and you are the -- I know that that is what you want

2   to pursue and --

3             THE DEFENDANT:  That's what I was told, Your Honor.

4             THE COURT:  Well, you want to pursue this; is that

5   correct?

6             THE DEFENDANT:  Yes, Your Honor.

7             THE COURT:  And I am overruling you, and you may

8   appeal that.  Do you understand that?  If I rule against you in

9   this matter, you may appeal that.

10       Now, let's talk about your being your own lawyer.  You are

11   a drug user, and I think by admission.  Do you still want to

12   represent yourself when you don't have a legal education, when

13   Mr. Tarver is here to represent you and he does, when he is

14   experienced in representing criminal defendants and you are

15   not?

16             THE DEFENDANT:  If he don't have my best interest, why

17   would he be here?  That's the reason I want my own attorney.

18             THE COURT:  He is your own attorney.  He has no

19   conflict of interest in representing you.  There is no reason

20   he should not continue to represent you.

21             THE DEFENDANT:  Okay.  I feel better representing

22   myself.  I will suffer the consequences, whatever they are.

23             THE COURT:  So do you wish to waive your

24   constitutional right to an attorney?

25             THE DEFENDANT:  My constitutional right was already

1    violated by sitting in the county jail for the last ten days.

2         THE COURT:  Do you wish to waive your constitutional

3    right --

4         THE DEFENDANT:  No.  I wish to have more time to get

5    an attorney.

6         THE COURT:  I am going to have Mr. Tarver to come up

7    here and represent you because you are not answering my

8    questions directly.

9      Mr. Tarver, you are still his lawyer, and do you and your

10   client have any objections to the violations in the -- the

11   allegations in the report other than the one that I am

12   preserving, and that is the timeliness of the process?

13        MR. TARVER:  Your Honor, I need time to talk to him

14   about the petition.

15        THE COURT:  All right.  I will give you five minutes.

16        MR. TARVER:  Thank you.

17        THE COURT:  Court is in recess for five minutes.

18      (Recess at 10:21 a.m., until 10:28 a.m.)

19        THE COURT:  All right.  Mr. Tarver, if you and

20   Mr. Cranford would come forward.  I think the question is:  Do

21   you have any objections to anything in the petition to revoke?

22        MR. TARVER:  No, Your Honor.  Other than the -- I

23   think the restitution has been satisfied, but other than that,

24   he admits to the allegations.

25        THE COURT:  Is that correct?

1        MS. MAZZANTI:  Yes, Your Honor.  We have just

2   confirmed that that is correct.

3        THE COURT:  All right.  I need to -- well first,

4   Ms. Mazzanti, would you summarize, then, the violations that

5   remain other than the restitution?

6        MS. MAZZANTI:  Your Honor, Mr. Cranford failed to

7   report for drug testing on seven different occasions from

8   January through September of 2011 -- January 5th, 18th, 25th,

9   February 15th, March 8th, July 1st, and September 13th.  He

10  also failed to participate in substance abuse treatment on a

11  consistent basis and had nine failure to appears for drug

12  treatment on -- and those dates were January 4th, April 5th,

13  and April 26th, June 29th, July 13th, July 27th, September 6th,

14  September 20th, and September 27th of 2011.

15       As for additional violations on May 9th -- or the

16  defendant has had seven positive drug tests on -- and that's on

17  May 9th, there was a positive for cocaine which was admitted by

18  Mr. Cranford.  On August 5, 2011, Mr. Cranford tested positive

19  for marijuana.  August 9th, he tested positive for marijuana

20  and admitted to using some synthetic marijuana last on

21  August 8th, 2011.  On August 17, he was confirmed positive for

22  marijuana and signed an admission form stating he had used on

23  August 5th, 9th, and 17th of 2011.  On August 31st, 2011, he

24  was confirmed positive for marijuana again.  On September 9th,

25  2011, he was confirmed positive for marijuana and cocaine, and

he admitted that he had used marijuana and cocaine on
September 6th.  On September 26th, the defendant tested
positive for marijuana, and he signed an admission form stating
he used marijuana on September 6th.

On August 25th, Mr. Cranford was stopped in Arizona, in
Yavapai County, Arizona, for a window tint violation.  At that
time he was the driver, and he had two passengers, one of whom
was a convicted felon.  During that stop the officer smelled
marijuana, and Mr. Cranford and the other two occupants
admitted to smoking marijuana in the vehicle.  And a small bag
of synthetic marijuana was located in the center console of the
vehicle, and a part of a marijuana cigarette was in one of the
passenger's purse.  The officers also found $2500 in currency
in Mr. Cranford's front and back pants pockets.  He refused
drug screens or sobriety tests and admitted the synthetic
marijuana was his.

He told the officers that he was on supervision for
possession of a controlled substance, and he misrepresented to
the officer that he was given permission to leave the state of
Arkansas.  He was arrested for possession and for use of a
dangerous drug, and he was released on August 26th, 2011.  The
deputy contacted Mr. -- or the federal probation officer and
the state parole officer, and both indicated that the defendant
did not have permission to travel.

Mr. Cranford also failed to notify the probation officer

1    of the arrest until he was confronted on August 31, 2011, by

2    the probation officer.

3         No charges have been filed on that at this point to our

4    knowledge, and the Arizona incident violated multiple

5    conditions, including committing another federal, state, or

6    local crime, possession of a controlled substance, use of a

7    controlled substance, leaving the judicial district without

8    permission of the Court or probation officer, and associating

9    with persons engaged in criminal activity or persons convicted

10   of felonies without permission, and notification of the

11   probation office within 72 hours of being arrested or

12   questioned by law enforcement.

13             THE COURT:  And do you know the status of the Arizona

14   charges?

15             MS. MAZZANTI:  Your Honor, the probation officer

16   informed me that he attempted to contact the office in Arizona

17   this morning and has not received any information about the

18   updated status of that case.

19             THE COURT:  Because I know the last time we were

20   together, that was still open.  In other words, they had not

21   dismissed the charges, but I would just like to know what's --

22             THE DEFENDANT:  Your Honor, I got -- received a letter

23   from Arizona saying they were not going to charge me because it

24   was so minor.

25             THE COURT:  All right.  Well, I need to --

1        Thank you, Ms. Mazzanti.

2        I need to make some findings now in the record with

3   respect to this violation.  All of these violations are Grade C

4   violations.  His criminal history category is a II.  The

5   custody range is four to ten months.  The Court, for a Grade C

6   violation, has other options other than revocation.  The

7   supervised release period would be no more than 42 months

8   because he has already had one revocation of supervised

9   release.  The restitution, everyone agrees, has been paid.  And

10  the Court could also sentence him to a term of home detention

11  or community confinement or some other modification.

12       And so now I will listen to Mr. Tarver and, of course, to

13  Mr. Cranford, as well as to the United States through

14  Ms. Mazzanti.

15       First, Mr. Tarver, do you want to put on any evidence?  I

16  know there are people here.

17            MR. TARVER:  No, Your Honor.  I don't have any

18  evidence to put on.  I did have some things that Mr. Cranford

19  wanted to point out to the Court.

20            THE COURT:  All right.

21            MR. TARVER:  With regards to the allegations, while he

22  admits to the allegations, there was -- by way of

23  clarification, he tells me that with regards to the drug

24  testing that he missed, on the phone calls there were several

25  dates that he missed the call and he called the next day to

1    say, "I forgot to call yesterday," but that he called the next

2    day.  As far as in -- there was -- and then there was an issue

3    about the dates that --

4        What was it?

5            THE DEFENDANT:  The drug rehab treatment.

6            MR. TARVER:  His drug rehab was scheduled for

7    Wednesdays, but he was working on Wednesdays and it conflicted

8    with his job.  And that's why he missed some of those dates,

9    but he talked to his probation officer and got it moved to

10   Tuesdays.  And that took care of that problem.

11       And with regards to the incident in Arizona, he states

12   that he did not admit to possession or ownership of the

13   synthetic marijuana and that the money was found all in one

14   pocket.

15       And in terms of mitigation for Mr. Cranford, what

16   Mr. Cranford is asking the Court for, if the Court recalls, he

17   had paid out of his own pocket to go into a drug rehabilitation

18   program that was a residential program.  We had the individual

19   come here and testify before the Court, and Mr. Cranford is --

20   would ask that the Court, you know, instead of revoking his

21   supervised release, that the Court extend his supervised

22   release and allow him to finish out that program, to complete

23   that program to see if he can comply with the conditions of

24   supervision, as well as continue to get drug rehabilitation

25   help that he needs.  He has indicated, you know, sending him

1    back to prison, it didn't allow him, because of the nature of

2    his original offense --

3              THE COURT:  Bank robbery.

4              MR. TARVER:  Yes -- to get the kind of drug treatment,

5    intensive drug treatment that he needed.  And that is, as you

6    can look at the petition, the vast majority of his violations

7    involve drug usage.  And he would just ask for an opportunity

8    to get into the residential program and complete that program.

9              THE COURT:  Mr. Cranford, would you like to say

10   anything?

11             THE DEFENDANT:  Yes, ma'am.  I would also like to add

12   that what really triggered the drug uses is I had a motorcycle

13   wreck on one of my cousin's bike, and I got put on the

14   hydrocodone pills.  And I really got addicted to them, and

15   that's what I would need treatment for.  And it just triggered

16   another one and it -- that's where the drug use come from.

17             THE COURT:  In other words, you say that you got

18   addicted to hydrocodone and then you -- it led to addiction to

19   other drugs?

20             THE DEFENDANT:  Yes, ma'am.  That's when everything

21   really started.  So --

22             THE COURT:  Ms. Mazzanti?

23             MS. MAZZANTI:  Your Honor, it's the government's

24   position that revocation and imprisonment is mandated in this

25   case.  It's mandatory under the statute for possession of a

1    controlled substance and refusing to comply with drug testing

2    and for testing positive more than three times in one year.  At

3    this point, Mr. Cranford, he was already revoked once, given

4    another chance to get on supervised release, and he obviously

5    did not take advantage of that.

6        There are a lot of violations here.  Seven failure to

7    appears for drug testing, nine for failure to appear for drug

8    treatment, seven positive drug tests, and then leaving the

9    state without permission, lying to an officer about his having

10   permission to leave the state, failing to report leaving the

11   state or his contact with law enforcement to his probation

12   officer, and these are very serious violations that we have.

13       Regardless of Mr. Cranford's explanation for it, he was

14   given the opportunity to get treatment and didn't take

15   advantage of his chance -- the chances he has already been

16   given.  Because of the number of violations here and

17   particularly -- I would also note that $2500 in his pants

18   pocket, that seems -- that's an interesting fact considering,

19   you know, the restitution issue at the time.  And so -- and the

20   possession of the marijuana in that case.

21       I would request a guideline sentence in this case, but at

22   the high end of the guideline range because of Mr. Cranford's

23   number of his violations as well as the number of chances he

24   has already been given by the Court and failed to take

25   advantage of those chances.

1    THE COURT:  Mr. Tarver, I will give you-all the last

2  word.  Do you have anything more to say?

3    THE DEFENDANT:  Yes, I do.  I don't think that I

4  really deserve all that because if you look at the history of

5  when I started having the motorcycle wreck, that's when

6  everything started.  And what I really need was drug rehab, and

7  I was so close to getting off papers that I was told that the

8  federal government would not pay for me to get into drug rehab

9  center.  So that's the reason it took me a little while to find

10  my own, and I did that.  So I really think I deserve another

11  chance.

12    THE COURT:  Is there any reason I should not impose

13  sentence at this time, Mr. Tarver?

14    MR. TARVER:  No, Your Honor.

15    THE COURT:  Well, I have reviewed the violation memo

16  and the petition to revoke, and I have listened to what

17  Mr. Cranford has said about his efforts to get himself into

18  drug treatment.  And I do remember he got himself into drug

19  treatment right -- at the other hearing, right before the other

20  hearing.

21    And I find, though, that this is really too little too

22  late, Mr. Cranford.  You have so many violations, and you have

23  continued to use marijuana.  I agree that you are an addict,

24  but I find that you have been given ample chances to comply

25  with the conditions of your supervised release and you have not

1   done so.  And I don't think that you were very serious about

2   any drug treatment rehabilitation effort until the verge --

3   until you were right before the last hearing.

4        So I am going to revoke your supervised release and

5   sentence you to a term of imprisonment for ten months -- you

6   have already started serving that -- with no supervised release

7   to follow.  I don't think you are a good candidate for

8   supervised release because of your repeated and numerous

9   violations.  I am not saying you didn't have some excuse at

10  some point not to show up for drug treatment or that you didn't

11  have some excuse at some point for not doing other things, but

12  you have had numerous violations, including using marijuana and

13  cocaine, leaving the district, getting into trouble with other

14  law enforcement and, of course, failing to report.  And so I

15  find that you have been given chances at rehabilitation that

16  you have not taken advantage of, and, therefore, I do revoke

17  your supervised release.

18       And Ms. Mazzanti takes the position that I had to do it

19  because it was a possession.  I have not treated it as a

20  possession.  I have treated it as a Grade C violation.

21  Possession is a Grade B violation.  So I am giving you a break

22  on that.  If I called it a Grade B violation, it would be --

23  even have been a more severe penalty.

24       You have already satisfied your restitution.  I do

25  recommend that while you are in custody, you participate in

1    substance abuse treatment offered by the Bureau of Prisons.

2    And I am not going to have any supervised release to follow

3    because you did not succeed in supervised release or benefit

4    from it.

5         Now, is there a particular institution where you would

6    like me to recommend that you be incarcerated?

7              MR. TARVER:  Your Honor, Mr. Cranford, before

8    addressing that issue, he wanted me to ask if he could do the

9    time in a halfway house, if the Court would order the ten

10   months be served in a halfway house.

11             THE COURT:  I cannot order -- that's not possible

12   anymore.  In other words, I am sentencing him to the Bureau of

13   Prisons, and I used to be able to sentence people and recommend

14   the halfway house as part of his sentence.  And that's not

15   allowed anymore.  It hasn't been allowed in a long time, and

16   it's really unfortunate because we would use that frequently to

17   avoid BOP time for anyone serving a sentence of less than 12

18   months -- or 12 months or less.  But it's just not available

19   now.

20        I certainly have no objection to the bureau placing him

21   early on in the halfway house as part of his sentence.  That is

22   residential reentry, and they might do that.  But I am not

23   going -- there is no way I can order the bureau to let him

24   serve his sentence in the halfway house because things have

25   changed.

1          Now, is there any other place you want me to recommend?

2               MR. TARVER:  Forrest City.

3               THE COURT:  I will put that on the order.

4          Now, it is my duty to explain to Mr. Cranford that he does

5     have the right to appeal, and you were talking about that

6     before.  You have the right to appeal what I have done today,

7     especially if you think it's an abuse of discretion or contrary

8     to the Constitution or contrary to United States law.  You have

9     to file your notice of appeal within ten days of judgment being

10    entered.  You have the right to an attorney and to have notice

11    of appeal filed for you.  And if you want, the clerk of court

12    who is here today will prepare and file the notice of appeal.

13         I want to ask Mr. Tarver if he will prepare and file the

14    notice for him since he has already qualified for IFP status

15    and you are representing him, if you will do that for

16    Mr. Cranford.

17              MR. TARVER:  Yes, Your Honor.

18              THE COURT:  And will you discuss with him his points

19    of appeal?

20              MR. TARVER:  Yes.

21              THE COURT:  All right.  Thank you.

22         Is there anything more, Ms. Mazzanti?

23              MS. MAZZANTI:  No, Your Honor.

24              THE COURT:  What about from you, Mr. Tarver?

25              MR. TARVER:  No, Your Honor.

1        THE COURT:  All right.  And, Mr. Cranford, Mr. Tarver

2   will do a good job for you.  He will.

3        Court is in recess.

4        (Proceedings adjourned at 10:47 a.m.)

5                    C E R T I F I C A T E

6        I, Cheryl Nelson Kellar, Official Court Reporter, do

7   hereby certify that the foregoing is a true and correct

8   transcript of proceedings in the above-entitled case.

9

10  /s/ Cheryl N. Kellar, RPR, CRR, CCR    Date:  December 28, 2011
        United States Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25